# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **CHRISTOPHER SCAIFE, as** ) <br> **Guardian of ANDREW E. SCAIFE,**) <br>    **Plaintiff,** ) <br> ) <br> v.    ) <br> ) <br> **EXPERIAN INFORMATION** ) <br> **SOLUTIONS, INC.,** ) <br> **TRANSUNION, LLC,** ) <br> **EQUIFAX INFORMATION** ) <br> **SERVICES, LLC and** ) <br> **NATIONAL CREDIT SYSTEMS,** ) <br> **INC.,** ) <br>    **Defendants.** ) | **CASE NO.: _____** |

## COMPLAINT

**COMES NOW** the Plaintiff, Christopher Scaife, as Guardian of Andrew Scaife (hereafter the "Plaintiff"), by and through the undersigned counsel, and for his complaint against the Defendants, alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to the Federal Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*.

### JURISDICTION AND PARTIES

2. The jurisdiction of this Court is conferred by 15 U.S.C. § 1681(p), 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1367.

3. The Plaintiff is the legally appointed of his son, Andrew Scaife, and is a natural person and resident of the State of Alabama. He is a "consumer" as defined by 15 U.S.C. § 1681a(c) AND 15 U.S.C. § 1692a(3).

4. Upon information and belief, Experian Information Solutions, Inc. (hereinafter "Experian") is an Ohio corporation with its principal place of business in Orange, California. According to the Alabama Secretary of State's website, its registered agent is CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, AL 36104.

5. Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

6. Experian disburses such consumer reports to third parties under contract for monetary compensation.

7. Upon information and belief, TransUnion, LLC. (hereinafter "TransUnion") is an Delaware limited liability company with its principal place of business in Chicago, Illinois. According to the Alabama Secretary of State's website, its registered agent is Prentice Hall Corporation System, Inc., 641 South Lawrence Street, Montgomery, Alabama 36104.

8. TransUnion is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, TransUnion is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

9. TransUnion disburses such consumer reports to third parties under contract for monetary compensation.

10. Upon information and belief, Equifax Information Services, LLC (hereinafter "Equifax") is a Georgia limited liability company with its principal place of business in Atlanta, Georgia. According to the Alabama Secretary of State's website, its registered agent is Corporation Service Company, Inc., 641 South Lawrence Street, Montgomery, Alabama 36104.

11. Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

12. Equifax disburses such consumer reports to third parties under contract for monetary compensation.

13. Upon information and belief, National Credit Systems, Inc. (hereinafter "National Credit") is a Georgia corporation doing business in the state of Alabama. According to the Alabama Secretary of State's website, its registered agent is CT Corporation System, Inc., 2 North Jackson Street, Suite 605, Montgomery, Alabama 36104.

14. National Credit is an entity that, regularly in the course of business, furnishes information to one or more consumer reporting agencies about its transactions or experiences with any consumer and therefore constitutes a "furnisher" under 15 U.S.C. § 1681s-2.

15. National Credit is a "debt collector" as that term is defined in 15 U.S.C. § 1692a(6) of the FDCPA.

**FACTS**

16. On or about December 27, 2011, Andrew Scaife leased an apartment from Maple Village Court in Pell City, Alabama. *See* attached Exhibit A, which is incorporated by reference herein.

17. On or about December 27, 2011, Andrew Scaife paid a $300 security deposit and prorated rent for the month. *See* attached Exhibit B, which is incorporated by reference herein.

18. Andrew Scaife is a military veteran who suffers from mental issues. Because of this, his father, Christopher Scaife, was appointed guardian of Andrew

Scaife on August 9, 2016. *See* attached Exhibit C, which is incorporated by reference herein.

19. Andrew Scaife timely made all rental payments until vacated the apartment in March 2017.

20. Andrew Scaife provided Maple Village with a forwarding address at the time he vacated the apartment.

21. Andrew Scaife never received a refund of his security deposit nor was he provided with an itemized statement explaining why the deposit was withheld, as required by Alabama Code § 35-9A-201(b) and (c).

22. Maple Village failed to pay to Andrew Scaife double his security deposit as required by Alabama Code § 35-9A-201(f).

23. Maple Village never notified Andrew Scaife of any outstanding debt.

24. Maple Village never commenced any civil suit to establish and/or collect any outstanding debt.

25. After vacating the apartment in March 2017, Andrew Scaife received no further communication from Maple Village.

26. Instead, on October 12, 2017, National Credit began contacting Andrew Scaife in an attempt to collect a debt allegedly owed by Mr. Scaife to Maple Village.

27. Christopher Scaife, the father and court-appointed guardian of Andrew Scaife, wrote to National Credit on October 22, 2017 to dispute the alleged debt.

Christopher Scaife disputed the debt, requested verification of the debt, and requested that National Credit not report the alleged debt to the credit reporting agencies (hereinafter "CRAs"), including Experian, TransUnion and Equifax. *See* attached Exhibit D, which is incorporated by reference herein.

28.     National Credit never verified the debt as required under 15 U.S.C. § 1692g(b).

29.     National Credit reported the debt as "in collection" to the CRAs, including Experian, Transunion and Equifax.

30.     On or about November 18, 2017, National Credit sent another collection letter. The letter stated that National Credit had already begun reporting the account negatively with all three CRAs. *See* attached Exhibit E, which is incorporated by reference herein.

31.     On January 3, 2018, National Credit sent another collection letter. The letter again reminded Andrew Scaife that National Credit "has already reported this account to all three national credit bureaus, which is likely affecting your ability to obtain credit, rent, or secure favorable interest rates." *See* attached Exhibit F, which is incorporated by reference herein.

32.     On or about January 8, 2018, Christopher Scaife again wrote to National Credit on behalf of his son and ward. Plaintiff demanded payment of $1,000 for National Credit's failure to verify the debt as required by the Fair Debt Collection

Practices Act. 15 U.S.C. § 1692(g). *See* attached Exhibit G, which is incorporated by reference herein.

33. On February 1, 2018, National Credit sent another collection letter. *See* attached Exhibit H, which is incorporated by reference herein.

34. National Credit has continued to send collection letters and has continued to negatively report the account to all three CRAs.

35. National Credit never report that the debt was being disputed.

36. On or about October 29, 2019, Andrew Scaife obtained a credit report from Experian. The National Credit tradeline shows that the alleged debt is in collection and that it is having a negative effect on Andrew Scaife's credit. *See* attached Exhibit I, which is incorporated by reference herein.

37. On or about October 29, 2019, Andrew Scaife also obtained a credit report from TransUnion. The National Credit tradeline shows that the alleged debt is in collection and that it is having a negative effect on his credit. *See* attached Exhibit J, which is incorporated by reference herein.

38. On or about November 1, 2019, Christopher Scaife, as guardian of Andrew Scaife, wrote to all three CRAs via Certified Mail. These letters, which included a citation to relevant Alabama law, explained that no debt was owed to National Credit and noted that Plaintiff had been disputing the alleged debt for years. The letters identified National Credit as the furnisher, provided the appropriate

account numbers and requested that the bureaus investigate the falsely reported item. *See* attached Exhibit K, which is incorporated by reference herein.

39. On or about February 4, 2020, Experian sent its "Dispute Results" to Andrew Scaife. The letter stated that the information supplied by Plaintiff had been supplied to National Credit. The results stated that "[t]he information you disputed has been verified as accurate." No changes were made to the National Credit entry. *See* attached Exhibit L, which is incorporated by reference herein.

40. Experian did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably verify the National Credit representation regarding the account.

41. On or about February 6, 2020, TransUnion sent to Plaintiff the results of its investigation. The letter stated that TransUnion had investigated the information supplied by Plaintiff. Again, "the disputed information was VERIFIED AS ACCURATE." No substantive changes were made to the National Credit Entry. *See* attached Exhibit M, which is incorporated by reference herein.

42. TransUnion did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably verify the National Credit representation regarding the account.

43. Plaintiff did not receive any response at all from Equifax regarding his November 2019 dispute letter.

44. Equifax did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably verify the National Credit representation regarding the account.

45. On or about February 28, 2020, Plaintiff obtained another credit report from TransUnion. Again, the National Credit entry appeared as the only "adverse account." *See* attached Exhibit N, which is incorporated by reference herein.

46. On or about March 10, 2020, Experian again sent its "Dispute Results" to Plaintiff. The letter stated that the information supplied by Plaintiff had been supplied to National Credit. The results stated that "[t]he information you disputed has been verified as accurate." No changes were made to the National Credit entry. *See* attached Exhibit O, which is incorporated by reference herein.

47. National Credit received Plaintiff disputes from Experian and from TransUnion, but failed to conduct a lawful investigation of Mr. Scaife's claims.

48. All Defendants failed to properly investigate and/or re-investigate these disputes. If Defendants had properly investigated, the National Credit entry would have been deleted from Plaintiff's credit reports or, at the very least, marked as disputed.

49. Defendants' failure to report Plaintiff's credit history accurately has caused him to be denied credit.

50. As late as February 21, 2020, Plaintiff has been denied credit because of the false report of "serious delinquency." *See* attached Exhibit P, which is incorporated by reference herein.

### COUNT I—FCRA CLAIMS AGAINST EXPERIAN

51. The Plaintiff realleges and incorporates paragraphs 1 through 50 above as if fully set out herein.

52. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

53. Experian violated 15 U.S.C. § 1681i on multiple occasions by failing to delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to National Credit; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

54. As a result of this conduct, action and inaction of Experian, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a

credit, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

55. Experian's conduct, action and/or inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

56. The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**WHEREFORE**, based on the numerous violations noted above, the Plaintiff demands judgment for compensatory and punitive damages against Experian for his attorney's fees and costs; for pre-judgment and post-judgment interest at the legal rate; and such other relief the Court does deem just, equitable and proper.

**COUNT II—FCRA CLAIMS AGAINST TRANSUNION**

57. Plaintiff realleges and incorporates paragraphs 1 through 50 above as if fully set out herein.

58. TransUnion violated 15 U.S.C. § 1681i on multiple occasions by failing to delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to National Credit; by failing to maintain

reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

59. TransUnion violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

60. As a result of this conduct, action and/or inaction of TransUnion, the Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

61. TransUnion's conduct, action and/or inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

62. The Plaintiff is entitled to recover costs and attorney's fees from TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**WHEREFORE**, based on the numerous violations noted above, the Plaintiff demands judgment for compensatory and punitive damages against TransUnion for

his attorney's fees and costs; for pre-judgment and post-judgment interest at the legal rate; and such other relief the Court does deem just, equitable and proper.

### COUNT III—FCRA CLAIMS AGAINST EQUIFAX

63. Plaintiff realleges and incorporates paragraphs 1 through 50 above as if fully set out herein.

64. Equifax violated 15 U.S.C. § 1681i on multiple occasions by failing to delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to National Credit; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

65. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

66. As a result of this conduct, action and/or inaction of Equifax, the Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

67. Equifax's conduct, action and/or inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

68. The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**WHEREFORE**, based on the numerous violations noted above, the Plaintiff demands judgment for compensatory and punitive damages against Equifax for his attorney's fees and costs; for pre-judgment and post-judgment interest at the legal rate; and such other relief the Court does deem just, equitable and proper.

### COUNT IV—FCRA CLAIMS AGAINST NATIONAL CREDIT

69. Plaintiff realleges and incorporates paragraphs 1 through 50 above as if fully set out herein.

70. National Credit violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(a) and (b) by initially reporting the inaccurate information to the CRAs; by continuing the National Credit representation within Plaintiff's credit file with Experian, TransUnion and Equifax without also including a notation that this debt was disputed; by failing to fully and properly investigate the Plaintiff's dispute of the National Credit representation; by failing to review all relevant information

regarding same; by failing to accurately respond to Plaintiff's dispute; by failing to correctly report results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the National Credit representations to the consumer reporting agencies.

71. As a result of this conduct, action and/or inaction of National Credit, the Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

72. National Credit's conduct, action and/or inaction was willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

73. The Plaintiff is entitled to recover costs and attorney's fees from National Credit in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**WHEREFORE**, based on the numerous violations noted above, the Plaintiff demands judgment for compensatory and punitive damages against National Credit for his attorney's fees and costs; for pre-judgment and post-judgment interest at the legal rate; and such other relief the Court does deem just, equitable and proper.

**COUNT V—MULTIPLE FDCPA CLAIMS AGAINST NATIONAL CREDIT**

74. Plaintiff realleges and incorporates paragraphs 1 through 50 above as if fully set out herein.

75. Andrew Scaife (and his father and guardian, Christopher Scaife) notified National Credit in 2017, and numerous times since, that the Maple Village debt was disputed.

76. Plaintiff also specifically requested that this disputed debt not be reported to the CRAs.

77. Despite these disputes and requests, National Credit continues to report the disputed debt to the CRAs without even noting that it is vehemently disputed.

78. National Credit's actions violate the plain language of the FDCPA, which prohibits debt collectors form "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8).

79. This same conduct also violates 15 U.S.C. § 1692e(2)(A), which prohibits false representations regarding the "character, amount or legal status of any debt." It does so in two ways: First, National Credit misrepresented the character and legal status of the debt—i.e., it failed to report that it was disputed. Second, it misrepresented the amount of the debt—i.e., assuming some debt was owed,

National Credit failed to account for the $600 that Maple Village owes Andrew Scaife under Alabama Code § 35-9A-201(f).

80. Finally, by attempting to collect $734, National Credit is in violation of 15 U.S.C. § 1692f(1), which prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Here, even assuming that Maple Village were somehow owed $734, it would not be permitted by law to recover this amount. Again, Alabama Code 35-9A-201(f) would require that this amount be reduced by $600.

**WHEREFORE**, the premises considered, the Plaintiff demands judgment against National Credit for actual damages; statutory damages of $1,000; and costs and attorney's fees. 15 U.S.C. § 1692k. Plaintiff demands such further and different relief as the Court may deem just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, based on the numerous violations noted above, the Plaintiff demands judgment for compensatory and punitive damages against Defendants, jointly and severally; for his attorney's fees and costs; for pre-judgment and post-judgment interest at the legal rate; and such other relief the Court does deem just, equitable and proper.

Respectfully submitted this 19th day of March, 2020.

*/s/ J. Gabriel Carpenter*
_____
Harvey B. Campbell, Jr.
J. Gabriel Carpenter and
Mary Ruth C. Smitherman
Attorneys for Plaintiff
ALABAMA CONSUMER LAW GROUP, LLC
Post Office Drawer 756
Talladega, AL 35161-0756
(256) 761-1858
buddy@aclg.law
gabe@aclg.law
maryruth@aclg.law