UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER SCAIFE, as Guardian of ANDREW E. SCAIFE, ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No.: 1:20-cv-00379-CLM |
| NATIONAL CREDIT SYSTEMS, INC., ) ) ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

When Andrew Scaife moved out of Maple Village Apartments, Maple Village charged him around $734 for smoking damage and an outstanding water utility bill. Andrew argues that he doesn't owe Maple Village the full $734 because, Andrew claims, Alabama law requires Maple Village to pay him $600 for not returning his original security deposit or providing him with an itemization of damages.

But Andrew doesn't sue Maple Village to determine whether it owes him $600. Instead, Christopher Scaife, Andrew's father and legal guardian, sues National Credit Systems, Inc. ("NCS") under the Fair Credit Reporting Act ("FCRA") for reporting that Andrew owed Maple Village about $734 and then failing to conduct an investigation that would have revealed that Maple Village owed Andrew $600. Christopher also says that NCS violated the Fair Debt Collection Practices Act

1

("FDCPA") by failing to communicate with credit reporting agencies ("CRAs") that Andrew disputed the $734 debt; by misrepresenting the character, amount, or legal status of Andrew's debt; and by seeking to collect a debt not permitted by law.

There is a genuine dispute of material fact as to whether NCS informed the CRAs that Andrew disputed the $734 debt. So a jury must decide whether NCS violated the FDCPA by failing to communicate that Andrew disputed the $734. For the reasons stated within, all other claims will be dismissed.

## STATEMENT OF THE FACTS

**A.    The Moveout**

Andrew lived in Maple Village from December 2011 until March 2017. Andrew's first lease with Maple Village required him to pay a $300 security deposit. Doc. 1-1 at 2. But Andrew's final lease with Maple Village, which governed the lease term of February 1, 2016 to January 31, 2017, did not require Andrew to pay a security deposit. Doc. 77 at 18.

On January 17, 2017, Christopher informed Maple Village that Andrew would be moving out by March 31. That same day, Andrew's mother, Sue Scaife, provided Maple Village with a notice to vacate that included a forwarding address for Andrew. The forwarding address was the address where Andrew's parents lived.

Andrew moved out of Maple Village on March 31. When Andrew moved out, Maple Village charged him $734.56 because of damage from smoking inside the

apartment and a water utility bill. And because Maple Village's final account balance reflected that it had $0 in deposits on hand from Andrew, it did not reimburse him for his security deposit. The Scaifes claim that they never received this final account statement from Maple Village.

### B.     Debt Collection

A little less than two months after Andrew moved out, Maple Village hired NCS to collect from Andrew. In October 2017, NCS wrote to Andrew demanding payment on the debt claimed by Maple Village. Christopher wrote back to NCS, asserting that Andrew owed Maple Village no money and that Maple Village had violated Alabama law by not notifying Andrew about what happened to his security deposit or providing him an itemization of damages.

From October 2017 to November 2019, Christopher continued to dispute the debt and requested that NCS not report the debt to CRAs.

### C.     Credit Reports

In October 2019, Andrew obtained credit reports from Experian, Equifax, and TransUnion that included the debt allegedly owed NCS. So, in January 2020, Andrew wrote to Experian disputing the debt. According to Andrew's letter, he had paid all rent as it came due, and Maple Village had never provided him with an itemization of damages.

NCS received Andrew's dispute around ten days later and launched an investigation. As part of its investigation, NCS reached out to Maple Village, which responded that Andrew still owed it the $734.56. So NCS continued to verify the debt as owed but states that it told the CRAs that Andrew disputed the debt. Andrew, however, obtained credit reports after NCS verified the debt as accurate, which include no notation that NCS marked the debt as disputed.

Andrew then tried to refinance a mortgage currently in Christopher's name. According to the Scaifes, Sun Trust Bank declined to extend Andrew credit because of derogatory information on his credit report—*i.e.*, the NCS entry that Andrew had an open account for $734.56.

## STANDARD OF REVIEW

Christopher and NCS each move for summary judgment. *See* Docs. 59, 61. In considering cross-motions for summary judgment, the court views the facts "in the light most favorable to the non-moving party on each motion." *See Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012). Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

The court starts by explaining the Scaifes' argument for why NCS wrongly reports that Andrew owes Maple Village $734. Under Alabama law, a landlord must either refund a tenant his entire security deposit or—within 60 days after termination of the tenancy—provide the tenant with an itemized list of amounts withheld. *See* Ala. Code § 35-9A-201. Landlords who violate this requirement must "pay the tenant double the amount of the tenant's original deposit." *See id.* Because Maple Village failed to either refund Andrew his original $300 security deposit or provide him with an itemization of damages, the Scaifes say Maple Village owes him $600. So Andrew shouldn't be liable to Maple Village for the full $734 that it says he owes.

Before addressing whether Maple Village's alleged violation of Alabama law permits Andrew to recover from NCS, the court must address NCS's argument that Andrew lacks standing to sue NCS under the FCRA and FDCPA.

**I.    Standing**

To determine whether a plaintiff has standing to sue, the court looks for three things: "(1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *See Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020). NCS asserts that Andrew cannot meet the first two requirements.

## A. Injury in Fact

An injury in fact must be both concrete and particularized. *See id.* All agree that Andrew's alleged injury—the reporting/seeking to collect a debt that Andrew says he doesn't owe and the refusal to mark the debt as disputed—is particularized because it posed a personal risk to Andrew. It is not an injury that Andrew shares with society at large.[1]

To satisfy the concreteness requirement, an injury must be real and not abstract. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). In other words, to be concrete, an injury (or the risk of injury) must actually exist. *See id.* The risk of injury from NCS's attempts to collect the alleged debt directly from Andrew differs from the risk of injury from NCS's reporting of the debt to the CRAs. So the court will address each action separately.

1. <u>Dunning letters</u>: Andrew argues that NCS's insistence in dunning letters that Andrew owed Maple Village $734 violated two provisions of the FDCPA: 15 U.S.C. § 1692e(2) and 15 U.S.C. § 1692f(1). Section 1692e(2) prohibits debt collectors from falsely representing "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2). Section 1692f(1) prohibits "[t]he collection of any

---

[1] Part of NCS's standing argument is that Christopher lacks standing to bring this case on behalf of Andrew. But a guardian may "sue or defend on behalf of a minor or an incompetent person." *See* Fed. R. Civ. P. 17(c)(1). And the probate court of St. Clair County has declared Andrew incapacitated and named Christopher as Andrew's guardian. *See* Doc. 60-1 at 5. So the court finds that Christopher can bring this case on Andrew's behalf. The court also rejects NCS's argument that Christopher has filed this case on behalf of himself and not Andrew.

amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

The problem for Andrew is that no evidence suggests the dunning letters misled him or that he tried to pay NCS the $734. Instead, Christopher immediately responded to the dunning letters by informing NCS that Andrew didn't have to pay the $734 because Maple Village violated Alabama law by not informing Andrew about what happened to his security deposit. And as the Eleventh Circuit has recently explained, misrepresentations that violate the FDCPA "are not actionable absent reliance and ensuing damages." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1000 (11th Cir. 2020).

The Scaifes seek to establish that Andrew suffered a concrete injury from NCS's dunning letters by pointing out that "he and his guardian have spent plenty of time and postage attempting to dispute the inaccurate debt." Doc. 67 at 10–11. But Christopher, not Andrew, is the one who wrote to NCS in response to its dunning letters. (Andrew only disputed the debt with Experian.) And Christopher has sued on behalf of Andrew, not on behalf of himself. So Christopher cannot use his own injuries to establish standing for Andrew. In short, like the plaintiffs in *Trichell*, the Scaifes allege that Andrew received misleading communications that did not mislead him. *See Trichell*, 964 F.3d at 1005. And the Scaifes plead the same FDCPA claims as the plaintiffs in *Trichell*. *See id.* at 994. So this court must reach the same result

as the Circuit Court did in *Trichell*: Andrew lacks standing to assert FDCPA claims based on dunning letters that did not mislead him.

Christopher's briefs only discuss NCS's alleged violations of 15 U.S.C. §§ 1692e(2), 1692f(1) in connection with the dunning letters. *See* Doc. 64 at 17–20, Doc. 71 at 12–13. He does not assert that NCS's communications with the CRAs violated these two FDCPA provisions or allege that any other action by NCS violated these statutes. The court will therefore dismiss the claims under 15 U.S.C. §§ 1692e(2), 1692f(1) for lack of jurisdiction.

2. <u>Reports to CRAs</u>: That said, Christopher also sues NCS under 15 U.S.C. §§ 1681s-2, 1692e(8) for reporting the $734 debt to the CRAs and for failing to communicate to the CRAs that Andrew disputed the debt.

The reporting of inaccurate information about a plaintiff's credit to a credit monitoring service creates an injury that satisfies Article III's concreteness requirement. *See Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017). And the failure to report that the debt is disputed creates a concrete injury because it exposes the plaintiff "to a real risk of financial harm caused by an inaccurate credit rating." *Sayles v. Advanced Recovery Sys., Inc.*, 865 F.3d 246, 250 (5th Cir. 2017).

The Scaifes have presented evidence that Andrew suffered not only a *risk* of harm from the reporting of the $734 debt to the CRAs but also *actual* harm. For example, Andrew suffered an injury by having to spend time trying to resolve the

alleged credit inaccuracy with Experian. *See Pedro*, 868 F.3d at 1280. And, according to Andrew, Sun Trust Bank declined to extend him credit because of the NCS entry on his credit report. So the court finds that the claims related to NCS's reporting of the $734 debt to the CRAs meet Article III's injury in fact requirement.

### B.     Traceability

Besides arguing that Andrew cannot meet Article III's injury in fact requirement, NCS argues that Andrew also cannot meet Article III's traceability requirement. "The causation element of Article III standing requires a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

NCS contends that the Scaifes cannot prove causation because the injury that Andrew complains of is that Maple Village failed to return his security deposit, so Andrew's injury is traceable to Maple Village, not NCS. Granted, Andrew argues that Maple Village has injured him by not paying him the $600 that Maple Village owes him under Alabama law. But that's not the *only* injury Andrew asserts. Andrew also says that NCS injured him by inaccurately reporting that Andrew owed Maple Village $734, without mentioning that the Scaifes dispute $600 of that amount.

The CRAs wouldn't have known about the $734 debt if NCS hadn't told them about it. So the court finds that the reporting of the $734 debt to the CRAs is fairly traceable to NCS and that Andrew meets the traceability requirement of Article III.

\* \* \*

In summary, Andrew suffered no concrete injury from NCS's dunning letters, so the court will dismiss the FDCPA claims related to the dunning letters for lack of standing. But Andrew has suffered a concrete injury from the reporting of the $734 debt to the CRAs and that injury is fairly traceable to NCS. So Christopher has Article III standing to bring Andrew's FCRA and FDCPA claims related to NCS's reporting of the debt to the CRAs.

## II. Fair Debt Collection Practice Act Claims (Count 5)

The court's jurisdictional ruling leaves only one FDCPA claim: an alleged violation of 15 U.S.C. § 1692e(8). Section 1692e(8) prohibits debt collectors from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a debt is disputed." 15 U.S.C. § 1692e(8). The Eleventh Circuit has yet to address when a debt collector's communication with CRAs violates this provision. But at least three other Courts of Appeal have held that debt collectors violate § 1692e(8) when they elect to communicate with CRAs about an alleged debt but omit that the debtor disputes the debt. *See Evans Portfolio Recovery Assocs.,*

10

*LLC*, 889 F.3d 337, 349 (7th Cir. 2018); *Sayles*, 865 F.3d at 249–50; *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 418 (8th Cir. 2008). These courts note two reasons why a debt collector who knows that a debtor disputes a debt but fails to mention that in debt related communications with CRAs violates the FDCPA. First, nothing within the text of § 1692e(8) requires the debtor's dispute to be valid or reasonable before triggering § 1692e(8)'s protections. *See Evans*, 889 F.3d at 346–47. And second, "the failure to inform a credit reporting agency that the debtor disputed his or her debt will always have influence on the debtor, as this information will be used to determine the debtor's credit score." *See id.* at 349.

The Scaifes argue that NCS violated § 1692e(8) when it updated its entry with the CRAs after Andrew disputed the debt with Experian in January 2020.[2] NCS's records show that it received Andrew's dispute on January 20, 2020 and responded to it on February 3, 2020. Five days later, NCS updated its entry on Andrew's TransUnion credit report, but the entry does not include a notation that Andrew disputed the debt the month before. *See* Doc. 1-1 at 43. The Scaifes point to this lack of a dispute notation as evidence that NCS did not tell TransUnion that Andrew disputed the debt.

---

[2] The FDCPA has a one-year statute of limitations. *See Rotiske v. Klemm*, 140 S. Ct. 355, 360–61 (2019). And NCS's communication with the CRAs after Andrew disputed the debt in January 2020 is the only NCS communication with the CRAs that Andrew shows falls within the applicable statute of limitations. So the court limits its discussion of the alleged violation of § 1692e(8) to this communication.

NCS responds with a declaration from its Vice President of Operations that when Andrew disputed the debt it marked his account as disputed with the credit bureaus and launched an investigation. And notes from an NCS employee who responded to Andrew's January 2020 dispute state that the employee would report the dispute. According to NCS, these statements from its employees establish that NCS reported the dispute because the TransUnion credit report is irrelevant, unauthenticated evidence that the Scaifes cannot use to defeat summary judgment.

When presented with a nearly identical set of facts, the Southern District of Florida held that there was a genuine dispute of material fact as to whether the defendant violated § 1692e(8). *See Sanchez v. Healthcare Revenue Recovery Grp., LLC*, 2018 WL 2021359, at *2–4 (S.D. Fla. Mar. 8, 2018). There, the court found that a declaration from the defendant's President that his company reported the disputed status of the plaintiff's debt to the CRAs conflicted with credit reports that included no notation that the plaintiff disputed the debt. *Id.* at *3. And the court reasoned that the plaintiff did not have to authenticate the credit reports at the summary judgment stage. *Id.* at *4.

This court agrees. "[O]therwise admissible evidence" may "be submitted in inadmissible form at the summary judgment stage, though at trial it must be submitted in admissible form." *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996). A reasonable juror could find that NCS's failure to note Andrew's dispute on

the TransUnion report means that NCS did not report the dispute. Or a reasonable juror could believe NCS's witness testimony. That means there is a genuine dispute of material fact about whether NCS reported the dispute. So the court will deny both parties' motions for summary judgment on the § 1692e(8) claims.[3]

## III. Fair Credit Reporting Act Claims (Count 4)

The Scaifes assert that NCS's communications with the CRAs also violated FCRA Section 1681s-2(b). Doc. 1 ¶¶ 69–73. Section 1681s-2(b) prohibits furnishers from furnishing information relating to a consumer to CRAs if: (a) the consumer has notified the furnisher that the information is inaccurate; and, (b) the information is, in fact, inaccurate. 15 U.S.C. § 1681s-2(b).

The Scaifes contend that NCS provided the CRAs with inaccurate information when it: (1) verified that Andrew owed the full $734 debt when Maple Village had not returned his security deposit, and (2) failed to report that Andrew disputed the debt. The court will address each alleged inaccuracy in turn.

### A. The Scaifes' claim that Andrew does not owe the full $734 is a legal dispute, not a factual inaccuracy.

The FCRA requires a plaintiff to "present evidence tending to show that a credit reporting agency prepared a report containing 'inaccurate' information."

---

[3] In its response to Christopher's motion for summary judgment, NCS contends that it can prevail on a bona fide error defense to the FDCPA claims. Because the court finds that there is a genuine dispute of material fact about whether NCS violated § 1692e(8) and NCS did not move for summary judgment on the bona fide error defense, the court will not address the bona fide error defense in this opinion. NCS will be free to assert the bona fide error defense at trial.

*Batterman v. BR Carroll Glenridge, LLC*, 829 F. App'x 478, 481 (11th Cir. 2020). And when suing a furnisher under § 1681s-2(b), "[a] plaintiff must show a factual inaccuracy rather than the existence of disputed legal questions." *Hunt v. JPMorgan Chase Bank, Nat'l Ass'n*, 770 F. App'x 452, 458 (11th Cir. 2019). Here, the Scaifes don't dispute that the reported debt is accurate as to the amount Andrew owed Maple Village for smoking damage and the remaining water utility bill. The Scaifes instead contend that Andrew doesn't owe Maple Village the full $734 because Maple Village must pay him $600 for failing to return the $300 security deposit he paid in 2011. As shown by the Eleventh Circuit's opinion in *Batterman*, the Scaifes' failure to dispute the amount Andrew owed in damages is fatal to his claim that NCS inaccurately verified the $734 debt.

 1. <u>*Batterman*</u>: This court has recently recounted in detail the facts and holding in *Batterman*. *See Edwards v. Med-Trans Corp.*, 2021 WL 1087228, at *3–4 (N.D. Ala. Mar. 22, 2021). In short, Jared Batterman rented an apartment from BR Carroll and moved out early because of damage from flooding in his apartment. BR Carroll then claimed that Batterman owed it $2,816 for early termination damages and later hired a third-party debt collector who reported the debt to CRAs. Batterman then sued BR Carroll, the third-party debt collector, and the CRAs under the FCRA, asserting that he did not owe the early termination damages because his apartment's uninhabitability meant he lawfully terminated the lease. *See id.* at *3.

The Eleventh Circuit held that Batterman failed to state a claim under the FCRA because "[t]he report of the liquidated damages is not a factual inaccuracy; rather, it is a contractual dispute." *Batterman*, 829 F. App'x at 481. And "[s]uch contractual disputes require resolution by a court of law, not a credit reporting agency." *See id.* In other words, "because Batterman challenged BR Carroll's reading of the contract, rather than the amount he reportedly owed under the contract, he had not pleaded a viable FCRA claim." *Edwards*, 2021 WL 1087228, at *4.

2. <u>Application to this case</u>: Applying *Batterman*, the Scaifes' main contention that Andrew does not owe the full $734 because Maple Village violated the Alabama Landlord and Tenant Law presents a legal defense to payment, not a factual inaccuracy. To determine whether Andrew had this defense to payment, NCS would have had to make the following legal determinations: (1) the failure to refund the security deposit or provide Andrew with an itemization of damages violated Alabama law; (2) the remedy for Maple Village's violation of Alabama law is that it owed Andrew $600; and (3) that Maple Village owed Andrew $600 relieved him of his obligation to pay Maple Village the full $734 balance that he owed it. The FCRA does not require NCS to resolve these legal questions; that's left up to the courts. *See Batterman*, 829 F. App'x at 481. So NCS did not violate the FCRA by failing to consider Maple Village's potential liability to Andrew under Alabama law when providing the CRAs with information about Andrew's alleged debt.

15

The Scaifes' argument that Maple Village's final account statement was inaccurate because it failed to address the $300 security deposit Andrew paid in 2011 comes closer to pointing to a potential factual inaccuracy in the debt that Andrew reportedly owed. But the obligations listed in the final account statement relate to Andrew's obligations under the lease contract he signed in February 2016, not the original lease contract he signed in 2011. Unfortunately, the 2016 lease contract is silent on whether Andrew's original security deposit would carry over to the new lease term. *See* Doc. 77 at 18–23. And the Scaifes have provided no evidence that Andrew paid a security deposit when he signed the 2016 lease contract. So the court finds that the final account statement's notation that the total deposit was $0 is not a factual inaccuracy. Instead, whether Andrew's original security deposit applied to the 2016 lease, is a contractual dispute, like the one in *Batterman*, that requires resolution by a court of law. NCS therefore did not violate the FCRA when it verified with the CRAs that Andrew owed Maple Village $734.

### B.     NCS did not violate the FCRA by failing to report that Andrew disputed the debt.

The Scaifes finally assert that NCS violated the FCRA by failing to report to the CRAs that Andrew disputed the debt it alleged he owed Maple Village. The Third, Fourth, and Ninth Circuits have all held that a furnisher can be liable under § 1681s-2(b) when it receives notice that a consumer disputes a debt but fails to report to CRAs the disputed status of the debt. *See Seamans v. Temple Univ.*, 744

F.3d 853, 866–67 (3d Cir. 2014); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163–65 (9th Cir. 2009); *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 150 (4th Cir. 2008). This court agrees that information provided a CRA can be inaccurate or incomplete under § 1681s-2(b) when a furnisher fails to report that a consumer disputes a reported debt.

As explained above, there is a genuine dispute of material fact about whether NCS reported to the CRAs that Andrew disputed the $734 debt. But unlike the FDCPA, the FCRA makes a furnisher liable for failing to report a dispute only if the dispute is meritorious. *See Gorman*, 584 F.3d at 1163. That is because while the FDCPA is concerned with how the failure to report the dispute influences the debtor, the FCRA is concerned only with the failure to report disputes "that could materially alter how the reported debt is understood" by CRAs. *See id.* Here, the Scaifes have not pointed to any factual inaccuracies in the information NCS provided the CRAs. Instead, they have merely shown that Andrew may not be legally obligated to pay the $734 under Alabama law or his final lease contract. So the court finds that NCS's alleged failure to report that Andrew disputed the debt did not materially alter how the CRAs understood his reported debt. The court will thus grant NCS's motion for summary judgment on the FCRA claims and deny Christopher's motion for summary judgment on those claims.

## CONCLUSION

In summary, the court will dismiss without prejudice the FDCPA claims related to the dunning letters for lack of jurisdiction. The court will dismiss with prejudice the FCRA claims. The claims under the FDCPA that NCS failed to report to the CRAs that Andrew disputed the debt will go to trial.

The court will therefore enter a separate order that **DENIES** Christopher's motion for summary judgment (doc. 59) and **GRANTS in PART** and **DENIES in PART** NCS's motion for summary judgment (doc. 61).

**DONE** this April 26, 2021.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE